UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CALYPSO CARGO LIMITED & CARIB       )
PETROLEUM, INC.,                    )
                                    )
            Plaintiffs,             )
                                    ) Civil Action No. 10-2125 (EGS)
        v.                          )
                                    )
UNITED STATES COAST GUARD,          )
                                    )
            Defendant.              )
_____)

**MEMORANDUM OPINION**

Plaintiffs, owners and charterers of the ship Havnor, brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking records regarding the detention of their ship by defendant, the United States Coast Guard.  After receiving the requested records, plaintiffs agreed to dismiss this action voluntarily on April 20, 2011.  Pending before the Court is plaintiffs' motion for attorneys' fees. Upon consideration of the motion, the memorandum in opposition and the notice of supplemental authority thereto, the relevant case law, the entire record in this case, and for the reasons stated below, the Court hereby **DENIES** plaintiffs' motion for attorneys' fees.

**I.   BACKGROUND**

On or about May 1, 2010, the ship Havnor was en route to the Dominican Republic, when it was followed and subsequently stopped by the United States Coast Guard. Compl. ¶ 8. The Coast Guard redirected the ship to Puerto Rico, where the ship's cargo tanks were searched. *Id.* Plaintiffs allege that, due to the actions of the Coast Guard, plaintiffs suffered a major economic loss. *Id.* Thereafter, on May 10, 2010, plaintiffs filed with the Coast Guard a FOIA request seeking all records related to the detention of the ship and its crew. *Id.* ¶ 9. In a letter dated June 8, 2010, the Coast Guard acknowledged receipt of plaintiffs' FOIA request. *Id.* ¶ 10. On August 17, 2010, plaintiffs filed an appeal with the Coast Guard for failing to provide the requested records. *Id.* ¶ 11. The Coast Guard acknowledged receipt of plaintiffs' FOIA requests and appeals in an email of August 23, 2010. *Id.* ¶ 12. On November 15, 2010, the Coast Guard informed plaintiffs that their FOIA request had been referred to the Coast Guard's San Juan Sector for a response. *Id.* ¶ 14.

Plaintiffs filed their complaint in this action on December 15, 2010. Subsequent to the filing of the complaint, the Coast Guard produced 150 pages of documents, and subsequently, an additional 1,125 pages of documents. Pls.' Mem. of Law in Supp. of Mot. for Attorney Fees ("Pls.' Mem.") at 3. Because

plaintiffs received all of the requested records, they agreed to dismiss this litigation voluntarily on April 20, 2011.  *See* Stipulation of Dismissal, Docket No. 9.  Plaintiffs filed a motion for attorneys' fees on June 20, 2011.  That motion is now ripe for determination by the Court.

## II.  LEGAL STANDARD

FOIA provides that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  In determining whether an award of attorneys' fees is appropriate, the court employs a two-step inquiry.  First, the court must determine whether the plaintiff is "eligible" for attorneys' fees, i.e. whether the plaintiff has "substantially prevailed" on his FOIA claim.  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011); *see also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984).  A party may "substantially prevail" by either obtaining relief through "a judicial order, or an enforceable written agreement or consent decree," 5 U.S.C. § 552(a)(4)(E)(ii)(I), or by eliciting a "voluntary or unilateral

change in position by the agency, if the complainant's claim is not insubstantial," *id.* § 552(a)(4)(E)(ii)(II).[1]

Once the court determines that the plaintiff has substantially prevailed, it must then, in the exercise of its discretion, determine whether the plaintiff is "entitled" to attorneys' fees. *See Weisberg*, 745 F.2d at 1495, 1498. In making that determination, the court analyzes four factors: (1) the benefit of the release to the public; (2) the commercial

---

[1] Prior to 2001, the D.C. Circuit construed fee eligibility under the "catalyst theory," pursuant to which, a plaintiff "'substantially prevailed' not only when he obtained an official disclosure order from a court, but also when he substantially caused the government to release the requested documents before final judgment." *Brayton*, 641 F.3d at 524-25 (citing *Summers v. Dep't of Justice*, 569 F.3d 500, 502 (D.C. Cir. 2009)). In 2001, the Supreme Court explicitly rejected the catalyst theory, holding that plaintiffs were only eligible for attorney fees if they were "awarded some relief by [a] court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). The D.C. Circuit confirmed that the *Buckhannon* standard applied to FOIA cases in *Oil, Chemical & Atomic Workers International Union, AFL-CIO v. Department of Energy*, 288 F.3d 452, 456-57 (D.C. Cir. 2002). However, in 2007, Congress enacted the OPEN Government Act, which abrogated the *Buckhannon* rule in the FOIA context and revived the possibility of FOIA fee awards in the absence of a court decree. *See* OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (2007). As the D.C. Circuit has recently made clear, "[t]he purpose and effect of [the OPEN Government Act] . . . was to change the 'eligibility' prong back to its pre-*Buckhannon* form." *Brayton*, 641 F.3d at 525; *see also N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) ("[T]he language found in [5 U.S.C. § 552(a)(4)(E)(ii)(II)] of the amended provision, essentially codifies the so-called 'catalyst theory' for determining a fee request against the United States, under which a plaintiff is deemed to have 'substantially prevailed' for purposes of § 552(a)(4)(E) if the litigation substantially caused the requested records to be released." (internal quotation marks and citation omitted)).

benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding.  *See id.* at 1498; *see also Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008); *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992).  "No one factor is dispositive," *Davy*, 550 F.3d at 1159, and entitlement is "a matter of district court discretion," *Tax Analysts*, 965 F.2d at 1094.

### III. ANALYSIS

Plaintiffs argue that they are eligible for attorneys' fees because this litigation was the catalyst for the release of the requested records.  *See* Pls.' Mem. at 4-6.  In opposition, defendant contends that the reason for the Coast Guard's delay in releasing the records was "the product of a consistent and reasonably diligent process," which was unrelated to plaintiffs' initiation of this action.  Def.'s Opp'n at 6-7.

As noted above, the key question under the "catalyst theory" is whether "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation[.]"  *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981).  In other words, plaintiffs must show that "prosecution of the action could reasonably be regarded as necessary to obtain the information, and that a causal nexus exists between the action

5

and the agency's surrender of that information." *Id.* at 588 (internal citations omitted); *see also Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009).  Although an agency cannot prevent an award of attorneys' fees simply by releasing the requested information before the plaintiff obtains a court order, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."  *Weisberg*, 745 F.2d at 1496.  Something more than "*post hoc, ergo propter hoc* must be shown."  *Public Law Educ. Inst. v. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984).  If, rather than the threat of an adverse court order, "an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit."  *Church of Scientology*, 653 F.2d at 588 (internal citations omitted); *see also Short*, 613 F. Supp. 2d at 106 ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing.").

According to defendant, shortly after receiving plaintiffs' FOIA request, the Coast Guard's Data Administration and FOIA Division ("DAFD") began processing the request.  *See* Def.'s Opp'n at 2.  Defendant asserts that DAFD searched for and compiled responsive records between May 2010 and July 2010.  *See*

*id.* (citing Supplemental Declaration of Dawn Patterson ("Patterson Decl."), Ex. 1, at ¶ 5).  After obtaining plaintiffs' consent to redact personal information, DAFD was prepared to release the documents, but it determined that certain documents contained potentially sensitive law enforcement information and needed to be reviewed by the legal office.  *Id.* (citing Patterson Decl. at ¶¶ 5-6).  DAFD sent the responsive documents to the legal office on August 24, 2010.  Patterson Decl. at ¶ 7.  After reviewing the documents, a legal officer returned the documents to DAFD for corrections on February 14, 2011.  *Id.*  On March 3, 2011, once corrections and a final review had been concluded, the documents were provided to plaintiffs in full, with the exception of redactions for personal information.  Def.'s Opp'n at 2 (citing Patterson Decl. at ¶ 7).  During this same time, the Coast Guard's Seventh District Legal Office ("D7") was also in the process of searching for and compiling responsive documents.  *Id.*  "Due to the volume of the records [1,125 pages], considerable time was needed" to complete the review.  *Id.* at 3 (citing Supplemental Declaration of LT Anna E. Steel ("Steel Decl."), Ex. 2, at ¶ 7).  Defendant asserts that D7 compiled and reviewed the records "without knowledge of Plaintiffs' December 15, 2010 complaint, and on May 25, 2011 released all 1,125 pages of responsive records to Plaintiffs."  *Id.* (citing Steel Decl. at ¶¶ 8-9).

Defendant has provided a detailed timeline of events leading up to the release of the requested records. As that timeline makes clear, multiple divisions within the Coast Guard had already begun coordinating and processing the plaintiffs' request before plaintiffs filed their lawsuit in December 2010. Similarly, in *Bigwood v. Defense Intelligence Agency*, the court was persuaded by the fact that defendant had expended considerable time and effort processing the plaintiff's request prior to the filing of his lawsuit. *See* 770 F. Supp. 2d 315, 321 (D.D.C. 2011). There, even though the agency's processing of the plaintiff's FOIA request was "extraordinarily delayed," because the defendant agency had conducted multiple searches and several rounds of document review prior to the commencement of the suit, the court concluded that plaintiff could not establish a causal nexus between the filing of his complaint and the defendant's release of documents. *Id.; see also Alliance for Responsible CFC Policy, Inc. v. Costle*, 631 F. Supp. 1469, 1470 (D.D.C. 1986) (explaining that because the plaintiff's FOIA request was "undeniably broad and required searches by several departments within the [agency,] . . . the [agency's] failure to disclose in timely fashion appears to be an unavoidable delay accompanied by due diligence in the administrative processes and not the result of agency intransigence" (internal quotation marks omitted)); *Lovell v. Dep't of Justice*, 589 F. Supp. 150,

8

154 (D.D.C. 1984) (finding that detailed documentation of the defendant agency's search revealed that its delay in responding to the FOIA request was due to "unavoidable delay accompanied by due diligence in the administrative process," and that it did not "ignore" or "negligently fail" to respond to the plaintiff's inquiries (citations omitted)).

As the D.C. Circuit has stated, "the causation inquiry must take into account whether the agency upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed." *Weisberg*, 745 F.2d at 1496 (internal quotation marks and citations omitted). In *Electronic Privacy Information Center v. Department of Homeland Security*, the case upon which plaintiffs rely in their notice of supplemental authority, the court noted that the agency "[did] not claim to have conducted any substantive searches for records prior to the commencement of the litigation." 811 F. Supp. 2d 216, 233 (D.D.C. 2011). Therefore, the court concluded that, although the agency alleged that its failure to disclose was due to "backlog as well as administrative error," such "generic statements—without any evidence demonstrating that a backlog existed or that the agency performed its due diligence in processing the plaintiff's FOIA requests—are insufficient to show that [the agency] experienced

'unavoidable delay' despite 'due diligence in the administrative process.'" *Id.* (internal citations omitted).

Here, by contrast, the Court is persuaded that defendant made a good faith effort to search for information and respond to plaintiffs' request. Defendant's declarations make clear that the delay in the Coast Guard's release was not due to intransigence, but rather was the result of a diligent, ongoing process that began before the initiation of the instant lawsuit. Moreover, plaintiffs have provided no evidence to suggest that a causal nexus exists between the filing of plaintiffs' action and the agency's surrender of information. Under these circumstances, the Court concludes that plaintiffs have not "substantially prevailed" and are thus not eligible for attorneys' fees. Accordingly, plaintiffs' motion for attorneys' fees must be denied.[2]

---

[2] Because the Court concludes that plaintiffs are not "eligible" for attorneys' fees, the Court need not determine whether they are separately "entitled" to attorneys' fees. However, even if the Court were to analyze the claim for attorneys' fees under the four factors set forth above, the Court would conclude that plaintiffs are also not entitled to attorneys' fees. With respect to the first factor, the benefit of release to the public, plaintiffs have not demonstrated how the release of records related to the detention of the Havnor and its crew "add[ed] to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (internal citations omitted). Rather, as plaintiffs concede, the reason for their FOIA request was to learn why the Coast Guard stopped and searched their ship. *See* Pls.' Mem. at 8. This case plainly falls under the line of cases involving plaintiffs who seek

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby **DENIES** plaintiffs' motion for attorneys' fees.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:     Emmet G. Sullivan
              United States District Court Judge
              March 23, 2012**

---

disclosure for commercial benefit or personal reasons and thus need no incentive to file suit.  See *Davy*, 550 F.3d at 1159; *Cotton*, 63 F.3d at 1120.  The second and third factors, the commercial benefit to plaintiffs and plaintiffs' interest in the records, are often considered together.  Plaintiffs argue that they will not receive any commercial benefit from the release of the records.  Pls.' Mem. at 8-9.  "The proper question, however, is not whether the disclosures resulted in commercial benefit, but whether the potential for private commercial benefit was sufficient incentive to encourage [plaintiff] to pursue his FOIA claim."  *Costle*, 631 F. Supp. at 1471 (internal citation and quotation marks omitted).  Here, the Court finds that plaintiffs had a significant personal interest in the information released.  *See, e.g.*, *Cotton*, 63 F.3d at 1120; *Short*, 613 F. Supp. 2d at 107 (finding that plaintiff was not entitled to fees on the ground that his FOIA request was motivated by an interest in the Army Corps of Engineers' progress on his petition and was thus pursued for his own commercial benefit).  Finally, the fourth factor—whether the agency's opposition to disclosure "had a reasonable basis in law" —is inapplicable here, where the Coast Guard was not opposed to disclosure, "recalcitrant in its opposition . . . or otherwise engaged in obdurate behavior." *Tax Analysts*, 965 F.2d at 1097.  Instead, and as discussed *supra*, the Court is persuaded that defendant was reasonably delayed in preparing its production.  Therefore, the Court finds, in its discretion, that plaintiffs are not entitled to attorneys' fees.